| WEINBERG ZAREH MALKIN PRICE LLP 45 Rockefeller Plaza, 20th Floor New York, New York 10111 Phone: 212-899-5470 Adrienne Woods, Esq. Email: awoods@wzmplaw.com  *Counsel to Dueto of Second Avenue, Inc.* | |

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:  DUETO OF SECOND AVENUE, INC.[1]  Debtor. | Chapter 11 – Subchapter V  Case No. 24-10708 (MEW) |

**FIRST AMENDED PLAN OF REORGANIZATION FOR A SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11 OF THE BANKRUPTCY CODE FILED BY DUETO OF SECOND AVENUE INC., DATED March 31, 2025**

**SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

This plan of reorganization (as amended, the "**Plan**") under Subchapter V of chapter 11 of title 11, United States Code §§ 101, *et seq.* ("**Bankruptcy Code**") is submitted by Dueto of Second Avenue, Inc. ("**Debtor**"), the above-captioned debtor and debtor in possession, pursuant to Bankruptcy Code §§ 1189 and 1190. Capitalized terms not otherwise defined herein shall have the meanings set forth in Article XI of the Plan.

Pursuant to Bankruptcy Code §§ 1191(c) and (d), Debtor will fund the Plan payments to creditors utilizing disposable income for a period of 36 months commencing on the Effective Date. The Plan provides for payment of Allowed Administrative Expenses and Priority Claims in full. Subchapter V Trustee Fees will be paid in accordance with the Bankruptcy Code within thirty (30) days of the Effective Date. Debtor's professionals have agreed to be paid over time to enable Debtor to continue making adequate protection payments to Secured Creditor while maintaining a comfortable margin for operations. Notwithstanding anything to the contrary stated herein, Allowed Administrative Claims consisting of Professional Fees and Subchapter V Trustee Fees shall not be paid until final Court approval of such fees.

The Plan proposes to pay Debtor's Secured Creditor, JP Morgan Chase Bank NA ("**Chase**") the value of the secured portion of its Claim, plus interest at 14.15%, from the proceeds of Debtor's operations, over a period of 36 months in equal monthly payments beginning on the

---

[1] The last four digits of Debtor's federal tax identification number are 0646.

1

Effective Date.

Unsecured Claims against Debtor, including the unsecured portion of Chase's Claim, will receive a distribution totaling approximately $29,000.00, which is three percent (3%), *pro rata*, from Debtor's Disposable Income in months ten (10), twenty-four (24), thirty (30) and thirty-six (36) of the Plan.

Debtor negotiated a consensual resolution of its lease cure of $14,462.47, with Landlord to be paid $654.10 per month over a 24-month period with 8% interest, for a total payment of $15,698.36. Landlord's attorney similarly consented to receive his payment of $9,000 with interest at 8% for payments of $282.03 per month for 36 months, with such payments totaling $10,152.98.

Debtor's Priority Sales Tax Claims of $6,770.12 and $29,013.03 will be paid over 36 monthly payments of $209.04 and 895.84, with  7% interest,  such payments totaling $7,525.50 and $32,250.24, respectively.[2]

All Allowed Claims shall be paid from Debtor's Disposable Income by monthly payments during the Term of the Plan, and Debtor's principal, Julio Sosa, shall act as Disbursing Agent.

The Bankruptcy Court for the Southern District of New York ("**Court**") will be asked to confirm this Plan.  If the Court confirms the Plan, then the Plan will be binding on Debtor, all creditors and interest holders, and other parties in interest in this case.

## ARTICLE I

## HISTORY OF DEBTOR'S BUSINESS OPERATIONS

Debtor is a hair salon located in the borough of Manhattan that leases space at 1303 Second Avenue, New York, New York 10065 ("**Premises**").  Debtor is an Upper East Side neighborhood institution offering high end salon services to residents of the community.  Debtor has operated at the Premises for more than 35 years, and employs eleven (11) people including Mr. Sosa and his wife.

Like many businesses offering personal care, Debtor's business suffered significant losses during the pandemic.  As a result, Debtor fell behind in its rent obligations during the recent pandemic.  During this time, Mr. Sosa stayed in regular contact with his landlord, 215 East 68th Street LP ("**Landlord**"). Mr. Sosa, Debtor's sole stockholder, asked Landlord for concessions to enable Debtor to remain at the Premises and continue operating.  While Landlord's representative verbally agreed to concessions on multiuple occasions, Landlord was never willing to enter into a written modification of the lease.  Ultimately, on or about November, 2023, Landlord demanded Debtor pay all arrears on 10 days' notice or face eviction.

Faced with no alternative, Debtor took out loans and entered into a merchant finance agreement to pay Landlord and keep Debtor operating.  Debtor made payments for as long as

---

[2] Representing Claim Nos. 13 and 15.

possible, but found itself unable to keep up with these significant payments as business was slow to recover even after the pandemic.

**The Bankruptcy Filing**

Debtor filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on April 25, 2024 ("**Petition Date**"). On April 26, 2024, this Court entered its Notice of Appointment of Subchapter V Trustee [ECF Doc. No. 10] appointing Jolene E. Wee Subchapter V Trustee ("**Subchapter V Trustee**").

On June 18, 2024, the Court entered its Order (I) Establishing Bar Dates for Filing Claims and (II) Approving the Form and Manner of Notice Thereof [ECF Doc. No. 35], which set the deadline for filing Claims other than by government agencies, as July 31, 2024, and the deadline for government agencies as October 22, 2024.

**Debtor's Liabilities on the Petition Date**

As of the Petition Date, Debtor had secured debt totaling $1,214,840.71. As collateral security for the various Secured Loans, each lender asserts a valid, perfected and enforceable interest in all Debtor's assets, including, among other things, accounts receivables and proceeds and products therefrom, including any and all "cash collateral" as such term is defined in section 363(a) of the Bankruptcy Code. Debtor estimates the liquidation value of its assets as $10,691.00. As such, only Chase holds a true Secured Claim. As of the Petition Date, Debtor owed Chase approximately $68,000.00. Thus, Chase holds a secured claim in the amount of $10,691.00 and the balance of its claim in the amount of $57,309.00 is an unsecured claim.

Including the unsecured portion of Chase's claim, Debtor's total unsecured debt is approximately $977,980.93.00. In addition to the unsecured portion of Chase's claim, this amount includes the claims of Funding Circle in the amount of $87,483.07, Kapitus LLC FNA Strategic Financing in the amount of $101,308.40, OnDeck in the amount of $226,931.25, the U.S. Small Business Association ("**SBA**") in the amount of $462,319.51 and small amounts owed to credit card companies.

Debtor was also in arrears to its Landlord in the amount of $14,462.47 as well as attorneys' fees of approximately $20,000.00, financial advisor fees of approximately $15,000.00, SubChapter V Trustee Fees of approximately $15,000.00.

Finally, Debtor owes sales tax totaling $35,783.15.

**Debtor's Current Operations**

On May 2, 2024, the Court entered its Interim Order Authorizing Use of Cash Collateral [ECF Doc. No. 15], and on May 15, 2024, the Court entered a Final Order Authorizing Use of Cash Collateral ("**Final Cash Collateral Order**") [ECF Doc. No. 19], thus permitting Debtor to utilize cash collateral to maintain business operations post-petition. After entry of the Final Cash Collateral Order, Debtor determined that Chase, and not the SBA, was the only secured creditor

and thus entitled to adequate protection payments. Accordingly, on July 1, 2024, the Court entered its Order Modifying Final Cash Colllateral Order [ECF Doc. No. 38] directing that adequate protection payments be made to Chase rather than the SBA.

On May 2, 2024, the Court entered its Interim Order (I) Authorizing Debtor to (A) Pay Prepetition Wages, Benefits, Prepetition Payroll Taxes and Other Obligations, (B) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief [ECF Doc. No. 16], and on June 5, 2024, the Court entered a Final Order (I) Authorizing Debtor to (A) Pay Prepetition Wages, Benefits, Prepetition Payroll Taxes and Other Obligations, (B) Make Payroll Deductions, (II) Authorizing Applicable Banks and Other Financial Institutions to Honor and Process Related Checks and Transfers, and (III) Granting Related Relief [ECF Doc. No. 24].

Debtor employs eight (8) employees, all of which are non-union, three (3) part time hourly workers who are paid a salary of approximately $1,560.00 per week and five (5) stylists, including the principal and his wife, who are paid on commissions based upon a percentage of what their customers pay, averaging $6,040.00 per week, for a total of approximately $7,600.00 per week.

Debtor is regularly meeting all post-petition financial obligations and generating positive cashflow.

**Debtor's Professional Retentions**

On July 16, 2024, the Court entered orders authorizing the retention and employment of Vernon Consulting, Inc. ("**Vernon**") as financial advisor [ECF Doc. No. 41] and Weinberg Zareh Malkin Price LLP ("**WZMP**") as counsel [ECF Doc. No. 40].

Debtor retained Vernon to assist with: (a) formulating financial projections to serve as a basis for the Plan and to determine the Debtor's ability to make distributions to creditors over time, (b) creating a liquidation analysis for the Plan, (c) preparing monthly operating reports, and (d) providing such other financial advisory services as may be necessary and appropriate.

**Debtor's Plan Process**

Debtor's financial projections were produced by Vernon in consultation with Debtor. Vernon's ability to produce reliable and reasonable financial projections is based on an in-depth review of Debtor's books and records and business and financial history during the five years prior to the Petition Date as well as current business cash and workflow, and reasonable assumptions as to Debtor's prospects for future business.

**Asset Summary – Liquidation Values**

| | |
|---|---|
| Fixed Assets | $    450.00 |
| Inventory | $        0.00 |
| Cash and Deposits | $10,241.00 |
| Accounts Receivable | $        0.00 |
| **TOTAL** | **$10,691.00** |

**Liability Summary[3]**

| Secured Debt | $10,691.00 |
|---|---|
| Priority Unsecured Debt | $35,783.00 |
| Nonpriority Unsecured Debt | $977,981.00 |
| **TOTAL DEBT** | **$1,024,455.00** |

**Gross Revenue History[4]**

| 2019 | $899,375.00 |
|---|---|
| 2020 | $535,839.00 |
| 2021 | $658,282.00 |
| 2022 | $664,024.00 |
| 2023 | $823,615.00 |

**Debtor's Compliance with the Bankruptcy Code**

Debtor has filed this Plan in good faith and represents the information contained herein is true and correct to the best of its knowledge and understanding. Debtor believes the Plan complies with all applicable provisions of the Bankruptcy Code. Debtor does not believe that subsections (a)(6), (a)(13), (a)(14), and/or (a)(15) of section 1129 of the Bankruptcy Code are applicable to Debtor or the Plan. Debtor affirmatively asserts that the Plan complies with the applicable provisions of sections 1129 (a)(1), (a)(2) and (a)(3), has been proposed in good faith and not by any means forbidden by law. Debtor affirmatively asserts that the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, pursuant to section 1129 (a)(11). Debtor asserts that the Plan complies with sections 1129 (b)(2)(A)(I) and 1129 (b)(2)(B)(ii).

To confirm the Plan, the Court must find that all creditors and equity interest holders would receive at least as much under the Plan as such claim or equity interest holders would receive in a chapter 7 liquidation. The liquidation analyses annexed hereto as Exhibit A establishes that, under the Plan, Claim and Equity holders will receive better treatment than if Debtor were to liquidate pursuant to chapter 7. Secured Creditors will receive the value of their collateral, over time and with interest, unsecured Creditors will receive a small but meaningful distribution, and equity will retain ownership.

Debtor must also show that it will have sufficient cash over the life of the Plan to make the required payments and operate the business. Debtor's financial projections, annexed hereto as Exhibit B, establish a reasonable likelihood that Debtor will have Disposable Income, as defined in section 1191(d), for the period described in section 1191(c)(2) of the Bankruptcy Code, sufficient to satisfy the payments due under the Plan. The final Plan payment is expected to be paid on the thirty-sixth-month anniversary of the Effective Date.

---

[3] Amounts represent good faith estimates based on scheduled amounts and filed claims.
[4] The last four years were heavily impacted by the COVID pandemic and are not indicative of Debtor's income potential.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

## <u>ARTICLE II</u>

### CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

As required by Bankruptcy Code sections 1122 and 1123, the Plan places Claims and Equity Interests in various classes and describes the treatment each class will receive under the Plan. The Plan also states whether each class of Claims or Equity Interests is impaired or unimpaired. A Claim or Equity interest can be impaired if the Plan alters the legal, equitable or contractual rights to which a Claimant is otherwise entitled. All Classes of Creditors are impaired under the Plan. If the Plan is confirmed, each Creditor's recovery is limited to the amount provided in the Plan.

The Plan provides for payment of "Allowed" claims which are defined in Article XI. Allowed Claims generally are claims that: (a) are allowed by final order of the Court, (b) estimated by final order of the Bankruptcy Court, or (c) claims that are listed on the debtor's Schedules and are not listed as disputed, contingent, or unliquidated.

*Unclassified Claims.*

Administrative Expenses and Priority Tax Claims have not been classified and are excluded from the Classes of Claims in accordance with Bankruptcy Code § 1123(a)(1).

*Administrative Expenses.*

Debtor must pay all Allowed Administrative Expenses in full. If an Administrative Expense is disputed, the Bankruptcy Court must determine the validity and amount of the Administrative Expense, or in other words, "allow" the Administrative Expense. Any Administrative Expense that is undisputed and is due and owing on the Effective Date shall be paid in accordance with this Plan, or upon such other terms as agreed upon by Debtor and the holder of an Allowed Administrative Expense or court order. If the Administrative Expense is disputed, payment will be made promptly after the Administrative Expense is allowed by the Bankruptcy Court.

There are several types of Administrative Expenses, including the following:

(a)    Debts that Debtor incurred after the Petition Date for goods and services related to the customary operation of Debtor's business. These obligations will be paid on an ongoing basis in accordance with Debtor's customary business practices and the terms between Debtor and applicable counterparties.

(b)    The value of the goods received by Debtor in the ordinary course of business within twenty (20) days prior to Petition Date.

(c)    Payments due to the Subchapter V Trustee for services rendered and expenses incurred in the Case under Bankruptcy Code § 503(b)(2). All fees and expenses requested by Debtor's professionals and Subchapter V Trustee are subject to review and approval by the Court under Bankruptcy Code §§ 329 and 330.

The following chart lists Debtor's estimated Administrative Expenses, and their proposed treatment under the Plan:

| Type | Estimated Amount Owed | Proposed Treatment |
|---|---|---|
| Professional fees (subject to Bankruptcy Court approval) | $35,000.00 | Paid from Disposable Income of post-confirmation operations and application of pre-petition retainer |
| Subchapter V Trustee | $15,000.00 | Paid from Disposable Income and $7,500.00 set aside for confirmation and post-confirmation operations as necessary |

**Unclassified Claims.**

*Allowed Administrative Claims other than Professional Fee Claims.*

These Allowed Claims incurred in the ordinary course shall be paid in the ordinary course. Debtor estimates Allowed Administrative Claims in the ordinary course to be $0.00.

*Allowed Professional Fee Claims.*

Allowed Professional Fee Claims shall be paid in full, in Cash from the the prepetition retainers and Disposable Income from post-confirmation operations within 29 months after the Effective Date. Debtor estimates Allowed Professional Fee Claims to be $35,000.00 (exclusive of Subchapter V Trustee's fees).

*Priority Tax Claims.*

A.    A tax Claim was filed by the Internal Revenue Service ("**IRS**") in the amount of $10,735.15, $8,215.15 of which is stated to be a Priority Debt [Claim No. 8]. Debtor disputes these Claims, which are stated as estimates of future employment taxes due, which are being paid in the ordinary course, and further believes that tax returns will establish that no monies are owed to the IRS. Debtor will reach out to the IRS and attempt to resolve them consensually before filing objections. To the extent Debtor determines Claim No. 8 is valid, the amount will be paid in full promptly after the Effective Date, or upon allowance, with any applicable interest, from Disposable Income from post-confirmation operations. The $2,520.00 unsecured claim will be added to the General Unsecured Claims (Class 2).

B.    A tax Claim was filed by the New York State Department of Taxation and Finance ("**NYSDTF**") in the amount of $6,770.12[5] which constitutes a Priority Tax Claim for sales tax [Claim No. 13]. Debtor does not dispute this Claim which will be paid over time with interest.

C.    A tax Claim was filed by the New York State Department of Taxation and Finance

---

[5] $7,661.60 as adjusted with interest.

("**NYSDTF**") in the amount of $29,013.03 which constitutes a Priority Tax Claim for sales tax [Claim No. 15]. Debtor does not dispute this Claim which will be paid over time with interest.

D.      New York City filed a Claim [Claim No.14] Debtor disputes this claim. Debtor has reached out to NYC and will attempt to resolve them consensually before filing objections. To the extent Debtor determines Claim No. 14 is valid, the amount will be paid in full promptly after the Effective Date, or upon allowance, with any applicable interest, from Disposable Income from post-confirmation operations.

**Classes of Claims and Interests**.

E.      Secured Claims (Class 1)

Class 1 consists of the Allowed Secured Claim of Chase in the approximate amount of $10,691.00. Chase shall receive payments of $366.17 per month, for thirty-six (36) months, which is inclusive of $2,491.00 in interest at 14.15% per annum. in accordance with the budget. Holders of Class 1 Claims are impaired and may vote on the Plan.

F.      General Unsecured Claims (Class 2)

Class 2 consists of the Allowed Claims of non-priority unsecured creditors, including the unsecured portion of Chase's Claim. Class 2 Claims are estimated at $977,980.93. Holders of Allowed Class 2 Claims will receive a distribution of approximately $29,000.00, which is _three percent (3%), *pro rata*, from Debtor's Disposable Income over the life of the Plan. Holders of Class 2 Claims are impaired and may vote on the Plan.

C.      Interests of the Debtor (Class 3)

Class 3 consists of the Interests in Debtor. The holder of the Interests, Julio Sosa, shall retain his Interest in Debtor and is not impaired under the Plan.

## ARTICLE III

## CONFIRMATION OF THE PLAN

*Voting by Impaired Classes of Claims.* Holders of Claims in Classes 1 and 2 are Impaired and entitled to vote to accept or reject the Plan, and the votes of such Holders will be solicited. A Class of Claims Impaired under the Plan shall have accepted the Plan if (i) the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (ii) more than one-half in number of the Holders (other than any Holder designated under § 1126(e) of the Bankruptcy Code) of such Allowed Claims actually voting in such Class have voted to accept the Plan.

*Acceptance by Impaired Classes of Claims.* If Holders of Claims in Class 1 or Class 2 vote to accept the Plan, Debtor will seek confirmation under §§ 1191(a) of the Bankruptcy Code.

*Rejection by Impaired Classes of Claims.* If Holders of Claims in Classes 1 or 2 do not vote to accept the Plan, Debtor will seek confirmation pursuant to § 1191(b) of the Bankruptcy Code, which states that the Court may approve this Plan "if the plan does not discriminate unfairly, and is fair and equitable" with regard to each impaired class that has not accepted it.

## ARTICLE IV

## IMPLEMENTATION OF THE PLAN

*Means for Implementation of the Plan.*

The Plan will be funded with Debtor's Disposable Income. On the Effective Date, all property of Debtor, tangible and intangible, will revert to Debtor, free and clear of all Claims, except as provided in the Plan. Upon the Effective Date, pursuant to Bankruptcy Code § 1191(a), Mr. Sosa shall continue to own the Interests in Debtor as Reorganized Debtor. Mr. Sosa will continue to serve as principal officer of Debtor. Upon the Effective Date, Debtor shall make all payments required under the Plan according to the payment provisions of the Plan to directly to claimants.

*Claim Objections.*

After the Effective Date, Reorganized Debtor shall have the sole authority to: (a) file, withdraw, or litigate to judgment, any objections to Claims; and (b) settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court. For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, Reorganized Debtor shall have and retain any and all rights and defenses Debtor had immediately prior to the Effective Date with respect to any Disputed Claim.

Any objections to Claims shall be filed on or before the Claims Objection Bar Date. For the avoidance of doubt, the Bankruptcy Court may extend the time period to object to Claims at any time.

*Avoidable Transfers; Settlement of Claims and Interests.*

Avoidance Actions will not be pursued by Debtor or Reorganized Debtor.

Pursuant to Bankruptcy Code § 1123 and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Avoidance Actions, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Avoidance Actions, and controversies pursuant to Bankruptcy Rule 9019, and entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement under Bankruptcy Code § 1123 and Bankruptcy Rule 9019 of all such Claims, Interest, Avoidance Actions, and controversies, as well as a finding by the Bankruptcy Court that such compromise and settlement is fair, equitable, reasonable, and in the best interests of Debtor, its Estate, and holders of all Claims and Interests.

*Treatment of Executory Contracts and Unexpired Leases.*

All executory contracts and unexpired leases, not otherwise assumed or rejected by Debtor during the pendency of the Chapter 11 Case shall be assumed rejected. Nothing contained in the Plan shall constitute an admission by Debtor or any other party that any contract or lease is an executory contract or unexpired lease or that Debtor has any liability thereunder. For the avoidance of doubt, pursuant to the Plan Debtor assumes its Lease on the Premises with Landlord.

Landlord has consented to receive lease cure of $14,462.47, in payments of $654.10 over a 24-month period with 8% interest, with a total payment of $15,698.36. Addtiionally, Landlord's counsel has consented to receive fees owed under the lease in the amount of $9,000 in 36 monthly payments with 8% interest payment and a total payment of $10,152.98.

*Effect of Confirmation of the Plan.*

After entry of the Confirmation Order and upon the Effective Date, all debts of Debtor shall be deemed fixed and adjusted according to the Plan, and Debtor and Reorganized Debtor shall have no liability on account of any Claims, except as set forth in the Plan and the Confirmation Order.

## ARTICLE V

### FEASIBILITY OF THE PLAN

Pursuant to Bankruptcy Code §§ 1129(a)(11) and 1191(a), the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of Debtor or any successor to Debtor, unless such liquidation or reorganization is proposed in the Plan. Debtor believes its financial projections demonstrate that it will have Disposable Income to make all required payments under the Plan.

To confirm the Plan, the Bankruptcy Court must find that all Creditors and Equity Interest holders who do not accept the Plan will receive at least as much under the Plan as such Claimants and Equity Interest holders would receive in a Chapter 7 liquidation. The liquidation analysis annexed to the Plan demonstrates that Claimants will receive more under the Plan than in a liquidation.

## ARTICLE VI

### DISCHARGE, EXCULPATION AND RELEASE

*Discharge*. If the Plan is confirmed under Bankruptcy Code §1191(b), as soon as practicable after completion by Debtor of all payments due under the Plan, unless the Court approves a written waiver of discharge executed by Debtor after the order for relief under this chapter, the Court shall grant Debtor a discharge of all debts provided in Bankruptcy Code § 1141(d)(1)(A), and all other debts allowed under Bankruptcy Code § 503.

*Binding Effect*. Except as provided in Bankruptcy Code §§ 1141 or 1192, as applicable, the provisions of this Plan shall, upon entry of the Confirmation Order, bind Debtor, each and every Claimant and holder of an Interest, and each party in interest, whether or not the Claim of such Claimant or Interests of such holder or party is provided for by the Plan and whether or not such Claimant or Interest holder, or party has accepted or has rejected the Plan. All payments made under the Plan will be in full and final satisfaction of the Allowed Claims of creditors.

**Injunction. EXCEPT AS OTHERWISE PROVIDED IN THE PLAN OR THE CONFIRMATION ORDER, FROM AND AFTER THE EFFECTIVE DATE, ALL PERSONS WITHOUT LIMITATION ARE PERMANENTLY ENJOINED FROM COMMENCING OR CONTINUING IN ANY MANNER ANY ACTION OR PROCEEDING (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE), AGAINST DEBTOR, REORGANIZED DEBTOR, DEBTOR'S**

**PROPERTY, OR ESTATE BASED ON ANY ACT, OMISSION, TRANSACTION, OR OTHER ACTIVITY OF ANY KIND OR NATURE THAT OCCURRED ON OR BEFORE THE EFFECTIVE DATE, INCLUDING ANY CLAIMS THAT ARE PROPERTY OF THE DEBTOR'S BANKRUPTCY ESTATE (COLLECTIVELY, THE "RELEASED CLAIMS"); *PROVIDED, HOWEVER*, THAT NOTHING IN THE PLAN OR CONFIRMATION ORDER SHALL ENJOIN THE UNITED STATES GOVERNMENT OR ANY OF ITS AGENCIES OR ANY STATE OR LOCAL AUTHORITY, FROM BRINGING ANY CLAIM, SUIT, ACTION OR OTHER PROCEEDINGS (WHETHER DIRECTLY, INDIRECTLY, DERIVATIVELY OR OTHERWISE) AGAINST DEBTOR, OR ANY OF ITS OFFICERS, DIRECTORS, EMPLOYEES, PRINCIPALS, MEMBERS, ATTORNEYS, ADVISORS, AGENTS, REPRESENTATIVES AND ASSIGNS, OR DEBTOR'S PROPERTY, FOR ANY LIABILITY UNDER THE INTERNAL REVENUE CODE, THE ENVIRONMENTAL LAWS OR ANY CRIMINAL LAWS OF THE UNITED STATES, OR ANY STATE OR LOCAL AUTHORITY. IN ADDITION, THE INJUNCTION PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**Release by the Debtor. PURSUANT TO BANKRUPTCY CODE § 1123(b), AND EXCEPT AS OTHERWISE SPECIFICALLY PROVIDED IN THE PLAN, UPON THE EFFECTIVE DATE, DEBTOR SHALL RELEASE UNCONDITIONALLY, AND HEREBY IS DEEMED TO FOREVER RELEASE UNCONDITIONALLY DEBTOR'S ADVISORS INCLUDING ATTORNEYS, ACCOUNTANTS AND FINANCIAL ADVISORS AND THE SUBCHAPTER V TRUSTEE (COLLECTIVELY, THE "RELEASED PARTIES"), FROM ANY AND ALL CLAIMS, OBLIGATIONS, SUITS, JUDGMENTS, DAMAGES, RIGHTS, CAUSES OF ACTION AND LIABILITIES WHATSOEVER, EXCEPT FOR THE RIGHT TO ENFORCE THE PERFORMANCE OF THEIR RESPECTIVE OBLIGATIONS, IF ANY, UNDER THE PLAN, WHETHER LIQUIDATED OR UNLIQUIDATED, FIXED OR CONTINGENT, MATURED OR UNMATURED, KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, THEN EXISTING OR THEREAFTER ARISING, IN LAW, OR OTHER OCCURRENCE TAKING PLACE ON OR PRIOR TO THE EFFECTIVE DATE, EXCEPT FOR THOSE CLAIMS OR LIABILITIES ARISING OUT OF OR RELATING TO ANY ACT OR OMISSION THAT CONSTITUTES GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT, *ULTRA VIRES* ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES. IN ADDITION, THE RELEASE PROVIDED FOR IN THE PLAN SHALL NOT RELEASE ANY ATTORNEY FROM ANY OBLIGATIONS OWED UNDER RULE 1.8(h) OF THE NEW YORK STATE RULES OF PROFESSIONAL CONDUCT FOR MALPRACTICE LIABILITY.**

**Exculpation. TO THE EXTENT PERMISSIBLE UNDER BANKRUPTCY CODE § 1125(e), NEITHER DEBTOR, NOR SUBCHAPTER V TRUSTEE SHALL HAVE OR INCUR ANY LIABILITY TO ANY HOLDER OF A CLAIM OR INTEREST FOR ANY ACT OR OMISSION DURING THE PENDENCY OF THE CHAPTER 11 CASE IN CONNECTION WITH, OR ARISING OUT OF, THE CHAPTER 11 CASE, THE PURSUIT OF CONFIRMATION OF THE PLAN, THE CONSUMMATION OF THE**

**PLAN, OR THE PROPERTY OR CASH TO BE DISTRIBUTED UNDER THE PLAN;** ***PROVIDED, HOWEVER,*** **THAT THE FOREGOING EXCULPATION SHALL HAVE NO EFFECT ON THE LIABILITY OF AN ENTITY WHICH RESULTS FROM ANY SUCH ACT OR OMISSION THAT IS DETERMINED IN A FINAL ORDER TO HAVE RESULTED FROM GROSS NEGLIGENCE, WILLFUL MISCONDUCT, BREACH OF FIDUCIARY DUTY, CRIMINAL CONDUCT,** ***ULTRA VIRES*** **ACTIONS, OR THE DISCLOSURE OF CONFIDENTIAL INFORMATION THAT CAUSES DAMAGES, AND, IN ALL RESPECTS, DEBTOR AND ITS OFFICERS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.**

*Good Faith*. Entry of the Confirmation Order shall constitute the determination by the Bankruptcy Court that the Released Parties have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, pursuant to, among others, Bankruptcy Code §§ 1125 and 1129(a)(3), with respect to the foregoing.

## ARTICLE VII

### CONFIRMATION AND EFFECTIVE DATE

*Conditions Precedent to Confirmation*. The following are conditions precedent to Confirmation of the Plan: (a) all terms, conditions and provisions of the Plan are approved in the Confirmation Order; (b) the proposed Confirmation Order shall be in form and substance acceptable to Debtor, Pursuit, the Subchapter V Trustee and the U.S. Trustee; and (c) Debtor shall have sufficient Cash to pay in full all Allowed Administrative Expenses, including Professional Fee Claims (except to the extent that holders of such Allowed Claims agree to different treatment), and all Allowed Priority Claims, including Priority Tax Claims.

*Conditions Precedent to the Effective Date*.  The following are conditions precedent to the Effective Date of the Plan: the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall have become a Final Order.  The Effective Date shall occur as soon as practicable after the Confirmation Order becomes a Final Order.

*Title to Assets*. Except as otherwise provided in the Plan or in the order confirming the Plan, confirmation of the Plan shall vest all of the property of the estate in Debtor, and after confirmation of the Plan, the property dealt with by the Plan shall be free and clear of all Claims of Creditors of Debtor. Property of the estate shall include, in addition to the property specified in Bankruptcy Code § 541, all property of the kind specified in that section that Debtor acquires, as well as earnings from services performed by Debtor, after the Petition Date but before the Case is closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code, whichever occurs first. Except as provided in under Bankruptcy Code § 1185, the Plan, or the Confirmation Order, Debtor shall remain in possession of all property of its estate.

*Binding Effect*. If the Plan is confirmed, the provisions of the Plan will bind Debtor and all Creditors, whether or not they accept the Plan. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

*Retention of Jurisdiction by the Bankruptcy Court*. The Bankruptcy Court shall retain

jurisdiction of the Chapter 11 Case with regard to the following matters: (i) to make such orders as are necessary or appropriate to implement the provisions of this Plan and to resolve any disputes arising from implementation of the Plan; (ii) to rule on any modification of the Plan proposed under Bankruptcy Code § 1193; (iii) to hear and allow all applications for compensation of professionals and other Administrative Expenses; (iv) to resolve all issues regarding Claims objections, including the estimation of Claims, and issues arising from the assumption/rejection of executory contracts or unexpired leases, and (v) to adjudicate any cause of action which may exist.

*Corporate Existence*. As the Effective Date, the certification of incorporation, bylaws, or articles of organization, as applicable, of Debtor shall be deemed amended to the extent necessary to carry out the provisions of the Plan. The entry of the Confirmation Order shall constitute authorization for Debtor to take or cause to be taken all actions (including, if applicable, corporation actions) necessary or appropriate to implement all provisions of, and to consummate, the Plan prior to, on, or after the Effective Date and all such actions taken or caused to be taken shall be deemed to have been authorized under the appliable law, order, rule, or regulation, including without limitation, such authorization to wind down, sell, or otherwise liquidate any and all remaining Assets, and take further action to dissolve Debtor upon or after the filing of a Final Decree.

*Final Decree*. Once Debtor's estate has been fully administered, as provided in Rule 3022 of the Federal Rules of Bankruptcy Procedure, Debtor, or such other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Court to obtain entry of a final decree closing the case. Alternatively, the Court may enter such a final decree *sua sponte*.

## ARTICLE VIII

## DEFAULT

Failure of Reorganized Debtor to make the distributions required under the Plan within 30 days of the required deadlines, or failure of Debtor to comply with any of the covenants or obligations contained in this Plan, which failure shall remain uncured for a period of ten (10) business days after written notice and an opportunity to cure, shall constitute a default under the Plan. The foregoing shall not be construed to prevent the implementation of any modification of the Plan, in accordance with the provisions of the Bankruptcy Code or any alteration of the time period set forth herein ordered by the Bankruptcy Court. In the event of a default, any creditor or party in interest may seek conversion or dismissal of the Chapter 11 Case.

## ARTICLE IX

## GENERAL AND MISCELLANEOUS PROVISIONS

*Definitions and Rules of Construction*. The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code not otherwise defined herein are used in the Plan.

*Severability*. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other

provision of the Plan.

*Binding Effect*. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

*Headings*. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan. Words denoting the singular number shall include the plural number and *vice versa*, and words denoting one gender shall include the other gender.

*Controlling Effect*. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Bankruptcy Rules), the laws of the State of New York govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in the Plan.

*Revocation or Withdrawal of the Plan*. Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation hearing, in which case the Plan shall be null and void and nothing contained herein shall be deemed to (a) constitute a waiver or release of any claims by or against, or any interests in, Debtor or any other person, or (b) prejudice in any manner the rights of Debtor or any person in any further proceedings involving Debtor.

*Modification of the Plan*. Debtor reserve the right to seek to amend or modify the Plan by order of the Bankruptcy Court as may be required. After the Effective Date, Debtor may, subject to order of the Bankruptcy Court, and in accordance with § 1127 of the Bankruptcy Code, remedy any defect or omission or reconcile any inconsistencies in the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan.

*Reservation of Rights*. Nothing contained herein shall prohibit Debtor or Reorganized Debtor from prosecuting or defending any of the rights of Debtor's estate.

*Severability*. Should any provision in the Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of the Plan.

*Successors and Assigns*. The rights and obligations of any entity named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

## ARTICLE X
## ATTACHMENTS

The Plan attaches and incorporates the following documents:

**Exhibit A**  Liquidation Analysis
**Exhibit B**  Financial Projections

## ARTICLE XI

## DEFINITIONS

For purposes of the Plan, the following terms shall have the meanings set forth below. Terms used in this Plan which are defined in the Bankruptcy Code, or the Bankruptcy Rules shall

have the meaning set forth in the Bankruptcy Code or the Bankruptcy Rules unless defined in this Plan. The meaning of the defined terms shall be equally applicable to the singular and plural forms of the terms defined, unless a different meaning is clearly required by and explained in the text.

"Administrative Expense" means any cost or expense of administration of the Case entitled to priority in accordance with the provisions of Bankruptcy Code §§ 503(b) and 507(a)(1), including, without limitation: (i) Claims for fees and expenses of Debtor's professionals and Subchapter V Trustee; (ii) Claims relating to goods received by Debtor's within twenty (20) days before the Petition Date in the ordinary course of Debtor's business; and (iii) the actual, necessary costs and expenses of preserving Debtor's Estate and operating its business (but only to the extent they are due or payable on or before the Effective Date).

"Allowed" means a Claim, other than an Administrative Expense or Interest in Debtor, which is: (i) listed in Debtor's Schedules filed in Chapter 11 Case as of the Effective Date, and not listed in the Schedules as disputed, contingent, unliquidated or unknown and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; (ii) set forth in a proof of Claim timely and properly filed in the Chapter 11 Case on or before the date fixed by the Bankruptcy Court (or by applicable rule or statute) as the last day for filing such proof of Claim, or late filed with leave of the Bankruptcy Court after notice and opportunity for hearing given to Debtor's counsel, and as to which no objection to the allowance thereof is filed on or prior to the Objections Bar Date; or (iii) determined to be allowed by a Final Order of the Bankruptcy Court. To the extent permitted under Bankruptcy Code § 506(b), an Allowed Claim shall include unpaid interest on the Claim and any reasonable unpaid fees, costs or charges provided for under the agreements under which such Claim arose. Any Claim which has been or is hereafter listed in the Schedules as contingent, unliquidated or disputed, and for which no Proof of Claim is or has been timely filed, is not considered an Allowed Claim and shall be expunged without further action by Debtor, or Reorganized Debtor.

"Allowed Administrative Expense" means all or that portion of any Administrative Expense which has been Allowed by a Final Order of the Bankruptcy Court.

"Allowed General Unsecured Claim" means any Allowed Claim that is not an Allowed Administrative Expense, Allowed Secured Claim, Allowed Priority Claim, or Insider Claim.

"Allowed Priority Claim" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code §§ 507(a)(3) through (a)(6).

"Allowed Secured Claim" means any Allowed Secured Claim against Debtor (a) secured by a Lien on Collateral, to the extent of the value (as of the Effective Date or such other date as may be established by the Court) of such Collateral (i) as set forth in the Plan or (ii) as determined by a Final Order of the Court pursuant to section 506 of the Bankruptcy Code, or (b) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code, to the extent of the amount subject to setoff; *provided, however*, that, to the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, the unsecured portion of such Claim shall be treated as a General Unsecured Claim.

"Allowed Priority Tax Claim" means any Allowed Claim or portion thereof entitled to priority under Bankruptcy Code § 507(a)(8).

"Avoidance Actions" means any and all claims, suits and causes of action held by Debtor (a) under Bankruptcy Code §§ 544, 547, 548, 549 or 550, and (b) any transferee of a transfer avoidable under Bankruptcy Code § 549 received from Debtor from and after the Petition Date, but prior to the Effective Date.

"Bankruptcy Code" means title 11 of the United States Code, as amended.

"Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of New York, in which the Chapter 11 Case is pending.

"Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure.

"Chapter 11 Case" means Debtor's chapter 11 case filed in the Bankruptcy Court as above-captioned.

"Claim" shall mean a claim against Debtor, as defined in Bankruptcy Code § 101(5).

"Claimant" means the holder of a Claim.

"Claims Objection Bar Date" shall mean the date up to and including 60 days following the entry of the Confirmation Order.

"Confirmation Date" means the date the Confirmation Order is entered in the Chapter 11 Case.

"Confirmation Hearing" means the hearing or hearings held by the Bankruptcy Court to consider confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

"Confirmation Order" means an order of the Bankruptcy Court confirming the Plan in accordance with Bankruptcy Code § 1191 and other applicable sections.

"Creditor" shall have the meaning set forth in Bankruptcy Code § 101(10).

"Disposable Income" shall have the meaning given to it in Bankruptcy Code § 1191(d), as calculated and projected by Vernon Consulting, Inc. as set forth in the Budget annexed to the Plan.

"Disputed Claim" means any Claim, proof of which was timely and properly filed, and (a) listed on the Schedules as unliquidated, disputed, or contingent, and which has not been resolved by written agreement between Debtor and Claimant or by an order of the Bankruptcy Court, (b) subject to dispute to the extent that Debtor or Reorganized Debtor asserted a claim against the holder of the Disputed Claim, or (c) as to which Debtor interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order. Prior to the filing of an objection to a Claim, or the expiration of the time within which to object to such Claim set forth in the Plan or otherwise established by order of the Bankruptcy Court, for purposes of the Plan, a Claim shall be considered a Disputed Claim if (x) the amount of the Claim specified in the proof of Claim exceeds the amount of the Claim scheduled by Debtor as other than

disputed, contingent or unliquidated, or (y) the Claim is not listed on the Schedules.

"Effective Date" means the first day on which the Confirmation Order has become a Final Order and on which all the conditions to the Effective Date in the Plan have been satisfied or waived.

"Final Order" means: (a) an order or a judgment of the Bankruptcy Court; or (b) a stipulation or other agreement entered into which is "so ordered" by the Bankruptcy Court, the operation or effect of which has not been reversed, stayed, modified or amended and as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time to appeal or seek reconsideration has expired by reason of statute or otherwise and as to which no appeal or petition for review, *certiorari* or reconsideration has been taken or is pending (or if such appeal or petition has been granted, it has been finally decided), as a result of which such order, judgment, stipulation or agreement shall have become final in accordance with applicable law.

"General Unsecured Claim" means an Allowed Claim that is not an Administrative Expense, Priority (Non-Tax) Claim, Priority Tax Claim or Secured Claim.

"Petition Date" means April 25, 2024.

"Plan" means Debtor's Subchapter V of Chapter 11 Plan of Reorganization, as it may be amended or modified.

"Professional Fee Claim" means any Administrative Expense by a professional retained by Debtor by Final Order of the Bankruptcy Court, and any Claim held by the Subchapter V Trustee for purposes of this Plan, for compensation for services rendered or reimbursement of expenses incurred by such Professional through and including the Effective Date to the extent such fees and expense have not been paid pursuant to an order of the Bankruptcy Court.

"Releasing Parties" means, collectively, all holders of Claims (whether or not asserted, transferred, hypothecated, waived, Allowed, allowable, choate, known, accrued, treated under this Plan or otherwise) against, or Interests in, Debtor.

"Reorganized Debtor" means Debtor after the Effective Date.

"Schedules" means Debtor's filed Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended pursuant to the Bankruptcy Rules.

"Subchapter V Trustee" means Jolene E. Wee in her capacity as the Subchapter V Trustee in the Chapter 11 Case.

"U.S. Trustee" means the Office of the United States Trustee for Region 2.

## <u>ARTICLE XII</u>

### TREATMENT OF CLAIMS ARISING UNDER MERCHANT CREDIT AGREEMENT

As of the Petition Date, Debtor was party to a merchant credit agreement pursuant to which

it obtained operating funds from Kapitus Servicing, Inc. ("**Kapitus**") which is listed in the alleged secured creditor group. While Kapitus describe the loan transaction as the sale by Debtor and the purchase by Kapitus of future accounts receivable, there are judicial holdings determining the true nature of these transactions to be loans, based upon, *inter alia*, the ability of the merchant to file a financing statement, the total collateral package securing Debtor's repayment obligation, including assets substantially more expansive than a portion of the Debtor's receivables, the presence of a personal guaranty, the fact that the Uniform Commercial Code expressly provides no distinction between the sale of, and a security interest in, a receivable, and for other reasons.

Based on the foregoing, upon Confirmation, Kapitus' agreement with Debtor shall be deemed solely and irrevocably to be that of a lender holding a claim against Debtor for the amount due under the transaction as of the Petition Date.

Further, upon Confirmation, the status of Kapitus' loan Claim shall be deemed to be Unsecured and Allowed only to the extent a timely proof of claim was filed. Debtor has designated any amount owed to Kapitus as disputed. Even further, since the value of the collateral securing Kapitus' Claim does not exceed its value, there is no value in such collateral to secure the Claims.

To the extent Kapitus provided less than reasonably equivalent value through the transaction, that difference is subject to avoidance as a fraudulent transfer, and its claim is subject to disallowance until the fraudulent transfer is repaid to the estate. If Kapitus disputes the treatment of its Claim as a general unsecured Claim as outlined in this Plan must timely file an objection to Confirmation. If Kapitus accepts the treatment proposed under the Plan, it shall be released from potential fraudulent transfer liability.

## **ARTICLE XIII**

### **NOTICES**

Notices shall be deemed given when received. All notices, requests or demands described in or required to be made in accordance with the Plan shall be in writing and shall be delivered by overnight mail and email transmission as follows:

If to Debtor:
WEINBERG ZAREH MALKIN PRICE LLP
45 Rockefeller Plaza, 20th Floor
New York, New York 10111
Adrienne Woods, Esq.
awoods@wzmplaw.com

If to the U.S. Trustee:
Tara Tiantian, Esq., Trial Counsel
U.S. Department of Justice
Office of the U.S. Trustee
Southern District of New York
Alexander Hamilton U.S. Custom House
One Bowling Green, Rm. 534

New York, New York 10004

<u>If to the Subchapter V Trustee:</u>
Jolene E. Wee
JW Infinity Consulting
447 Broadway Street
Second Floor, Suite 502
New York, New York 10013

<u>If to a holder of a Claim or Interest:</u>
The address set forth in its proof of Claim filed with the Court, or, if none, at its
address set forth in the Schedules.

Dated: New York, New York
      March 31, 2025           **DUETO OF SECOND AVENUE, INC.**

                                   */s/ Julio Sosa*_____
                                    Name:  Julio Sosa
                                    Title: Owner

**EXHIBIT A**

**LIQUIDATION ANALYSIS**

**Dueto of Second Avenue, Inc.**
*Liquidation Analysis*
*As of July 23, 2024*

| Assets | Ref. | Book Value | Estimated Liquidation Value | % Paid Upon Liquidation |
|---|---|---|---|---|
| Cash | 1 | $ 10,241 | $ 10,241 | |
| Accounts Receivable | 2 | - | - | |
| Inventory - Product | 3 | 1,450 | - | |
| Furniture and Equipment | 4 | - | 450 | |
| Leasehold Improvements | 5 | 206,107 | - | |
| Security Deposits/Retainers | 6 | 41,425 | - | |
| **Estimated Value** | | 259,223 | 10,691 | |
| | | | | |
| **Distribution of Encumbered Assets** | | | | |
| Senior Lienholder | 7 | 70,517 | 10,691 | 15.2% |
| **Net Liquidation Proceeds** | | | - | |
| | | | | |
| Unencumbered Assets | | - | - | 0.0% |
| | | | | |
| **Administrative Claims** | | | | |
| US Trustee Fees (if Converted) | 8 | - | - | |
| Chapter 7 Trustees Fees - Estimated | 9 | 25,000 | - | 0.0% |
| Chapter 11 Subchapter V Administrative - Est. | 10 | 5,000 | - | 0.0% |
| **Net Proceeds After Administrative Claims** | | | - | 0% |
| | | | | |
| **Priority Claims** | | | | |
| Priority Tax Claims | 11 | - | - | |
| **Net Proceeds After Priority Claims** | | | - | 0% |
| | | | | |
| **Unsecured Claims** | | | | |
| Unsecured Portion of Senior Lienholder | 12 | 59,826 | | 0% |
| Unsecured Claims (Non-Insiders) | 13 | 691,023 | | 0% |

**EXHIBIT B**

**FINANCIAL PROJECTIONS**

Dueto of Second Ave, Inc.
*Plan of Reorganization Budget - Updated 03/31/2025*

| OPERATING CASH FLOW | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | May-25 | Jun-25 | Jul-25 | Aug-25 | Sep-25 | Oct-25 | Nov-25 | Dec-25 | Jan-26 | Feb-26 | Mar-26 | Apr-26 |
| **Beginning Cash** | $ 20,000 | $ 13,340 | $ 14,757 | $ 15,143 | $ 13,028 | $ 11,207 | $ 12,570 | $ 9,704 | $ 6,989 | $ 5,566 | $ 437 | $ 8,780 |
| **Operating Receipts** | | | | | | | | | | | | |
| Sales Revenue | 73,625 | 74,835 | 68,385 | 63,225 | 63,850 | 70,625 | 61,625 | 59,375 | 62,125 | 64,875 | 80,775 | 64,085 |
| **Total Receipts** | 73,625 | 74,835 | 68,385 | 63,225 | 63,850 | 70,625 | 61,625 | 59,375 | 62,125 | 64,875 | 80,775 | 64,085 |
| **Cash Disbursements - Operating** | | | | | | | | | | | | |
| Payroll (Includes ER PR Taxes) | 32,588 | 33,132 | 30,230 | 27,908 | 28,189 | 31,238 | 27,188 | 26,175 | 27,413 | 28,650 | 35,805 | 28,295 |
| Payroll Benefits - Insurance | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 |
| Accounting & Bookkeeping | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 |
| Advertising | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Subscriptions | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Bank Service Charges | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Business Licenses and Permits | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Cleaning/Maintenance | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 |
| Insurance | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 |
| Lease: Leaf | 209 | 209 | 209 | 209 | 209 | 209 | 209 | - | - | - | - | - |
| Magazines & Periodicals | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| Merchant Account Fees | 2,209 | 2,245 | 2,052 | 1,897 | 1,916 | 2,119 | 1,849 | 1,781 | 1,864 | 1,946 | 2,423 | 1,923 |
| Rent Expense | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 |
| Lease Deferrals | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 |
| Supplies - COGS | 3,681 | 3,742 | 3,419 | 3,161 | 3,193 | 3,531 | 3,081 | 2,969 | 3,106 | 3,244 | 4,039 | 3,204 |
| Supplies - Other Office | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 |
| Travel | 58 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Telephone Expense | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Trash | 200 | 200 | 200 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 |
| Utilities | 1,500 | 1,500 | 1,500 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 |
| **Total Disbursements - Operating** | 66,377 | 67,011 | 63,592 | 60,932 | 61,264 | 64,854 | 60,084 | 58,683 | 60,140 | 61,598 | 70,025 | 61,179 |
| **Cash Flows From Operations** | 7,248 | 7,824 | 4,793 | 2,293 | 2,586 | 5,771 | 1,541 | 692 | 1,985 | 3,277 | 10,750 | 2,906 |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| Professional Fees - Debtor Counsel | 2,000 | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | - |
| Professional Fees - Financial Advisor | 2,000 | 2,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | - | - | - | - | - |
| Sub V Trustee Fees | 7,500 | - | - | - | - | - | - | - | - | - | - | - |
| Lease Cure | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 |
| Priority Creditors | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 |
| Secured Lienholder | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 |
| Unsecured Creditors | - | - | - | - | - | - | - | - | - | 5,000 | - | - |
| Other Restructuring Costs | | | | | | | | | | | | |
| **Total Restructuring Costs** | 13,907 | 6,407 | 4,407 | 4,407 | 4,407 | 4,407 | 4,407 | 3,407 | 3,407 | 8,407 | 2,407 | 2,407 |
| **Total Disbursements** | 80,285 | 73,418 | 68,000 | 65,340 | 65,671 | 69,262 | 64,492 | 62,090 | 63,547 | 70,005 | 72,432 | 63,586 |
| **Net Cash Flow (Before Financing)** | (6,660) | 1,417 | 385 | (2,115) | (1,821) | 1,363 | (2,867) | (2,715) | (1,422) | (5,130) | 8,343 | 499 |
| **Closing Cash Balance** | $ 13,340 | $ 14,757 | $ 15,143 | $ 13,028 | $ 11,207 | $ 12,570 | $ 9,704 | $ 6,989 | $ 5,566 | $ 437 | $ 8,780 | $ 9,279 |

Dueto of Second Ave, Inc.
*Plan of Reorganization Budget - Updated*

| OPERATING CASH FLOW | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | May-26 | Jun-26 | Jul-26 | Aug-26 | Sep-26 | Oct-26 | Nov-26 | Dec-26 | Jan-27 | Feb-27 | Mar-27 | Apr-27 |
| **Beginning Cash** | $ 9,279 | $ 9,667 | $ 5,240 | $ 1,582 | $ (133) | $ (555) | $ 315 | $ 795 | $ 4,524 | $ 3,937 | $ 2,272 | 1,614 |
| **Operating Receipts** | | | | | | | | | | | | |
| Sales Revenue | 63,850 | 70,625 | 61,625 | 59,375 | 62,125 | 64,875 | 65,110 | 72,020 | 62,840 | 60,545 | 62,687 | 66,155 |
| **Total Receipts** | 63,850 | 70,625 | 61,625 | 59,375 | 62,125 | 64,875 | 65,110 | 72,020 | 62,840 | 60,545 | 62,687 | 66,155 |
| **Cash Disbursements - Operating** | | | | | | | | | | | | |
| Payroll (Includes ER PR Taxes) | 28,189 | 31,238 | 27,188 | 26,175 | 27,413 | 28,650 | 28,756 | 31,865 | 27,734 | 26,702 | 27,665 | 29,226 |
| Payroll Benefits - Insurance | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,775 | 2,775 | 2,775 | 2,775 | 2,775 | 2,775 |
| Accounting & Bookkeeping | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 |
| Advertising | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| Subscriptions | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 |
| Bank Service Charges | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 |
| Business Licenses and Permits | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 |
| Cleaning/Maintenance | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 |
| Insurance | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 |
| Lease: Leaf | - | - | - | - | - | - | - | - | - | - | - | - |
| Magazines & Periodicals | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 |
| Merchant Account Fees | 1,916 | 2,119 | 1,849 | 1,781 | 1,864 | 1,946 | 1,953 | 2,161 | 1,885 | 1,816 | 1,881 | 1,985 |
| Rent Expense | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 |
| Lease Deferrals | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 |
| Supplies - COGS | 3,193 | 3,531 | 3,081 | 2,969 | 3,106 | 3,244 | 3,255 | 3,601 | 3,142 | 3,027 | 3,134 | 3,308 |
| Supplies - Other Office | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 |
| Travel | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | 50 |
| Telephone Expense | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 |
| Trash | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 | 225 |
| Utilities | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 | 1,550 |
| **Total Disbursements - Operating** | 61,054 | 64,645 | 59,875 | 58,683 | 60,140 | 61,598 | 62,222 | 65,884 | 61,019 | 59,803 | 60,938 | 62,776 |
| **Cash Flows From Operations** | 2,796 | 5,980 | 1,750 | 692 | 1,985 | 3,277 | 2,888 | 6,136 | 1,821 | 742 | 1,749 | 3,379 |
| **Restructuring Disbursements** | | | | | | | | | | | | |
| Professional Fees - Debtor Counsel | - | 2,000 | 2,000 | - | - | - | - | - | - | - | - | - |
| Professional Fees - Financial Advisor | - | 1,000 | 1,000 | - | - | - | - | - | - | - | - | - |
| Sub V Trustee Fees | - | 5,000 | - | - | - | - | - | - | - | - | - | - |
| Lease Cure | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 | 936 |
| Priority Creditors | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 |
| Secured Lienholder | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 |
| Unsecured Creditors | - | - | - | - | - | - | - | - | - | - | - | 4,000 |
| Other Restructuring Costs | - | - | - | - | - | - | - | - | - | - | - | - |
| **Total Restructuring Costs** | 2,407 | 10,407 | 5,407 | 2,407 | 2,407 | 2,407 | 2,407 | 2,407 | 2,407 | 2,407 | 2,407 | 6,407 |
| **Total Disbursements** | 63,462 | 75,052 | 65,282 | 61,090 | 62,547 | 64,005 | 64,629 | 68,292 | 63,426 | 62,210 | 63,345 | 69,183 |
| **Net Cash Flow (Before Financing)** | 388 | (4,427) | (3,657) | (1,715) | (422) | 870 | 480 | 3,728 | (586) | (1,665) | (658) | (3,028) |
| **Closing Cash Balance** | $ 9,667 | $ 5,240 | $ 1,582 | $ (133) | $ (555) | $ 315 | $ 795 | $ 4,524 | $ 3,937 | $ 2,272 | $ 1,614 | $ (1,414) |

Dueto of Second Ave, Inc.
*Plan of Reorganization Budget - Updated*

| OPERATING CASH FLOW | 25 | 26 | 27 | 28 | 29 | 30 | 31 | 32 | 33 | 34 | 35 | 36 | 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Month | May-27 | Jun-27 | Jul-27 | Aug-27 | Sep-24 | Oct-24 | Nov-24 | Dec-24 | Jan-25 | Feb-25 | Mar-25 | Apr-25 | Total |
| **Beginning Cash** | $ (1,414) | $ 4,407 | $ 6,807 | $ 10,116 | $ 9,436 | $ 12,008 | $ 3,236 | $ 4,353 | $ 8,655 | $ 8,727 | $ 8,661 | $ 9,888 | 20,000 |
| **Operating Receipts** | | | | | | | | | | | | | |
| Sales Revenue | 75,080 | 76,314 | 69,735 | 64,472 | 80,775 | 64,085 | 63,850 | 70,625 | 61,625 | 60,375 | 63,125 | 64,875 | 2,394,173 |
| **Total Receipts** | 75,080 | 76,314 | 69,735 | 64,472 | 80,775 | 64,085 | 63,850 | 70,625 | 61,625 | 60,375 | 63,125 | 64,875 | 2,394,173 |
| **Cash Disbursements - Operating** | | | | | | | | | | | | | |
| Payroll (Includes ER PR Taxes) | 33,242 | 33,798 | 30,837 | 30,020 | 35,805 | 28,295 | 28,189 | 31,238 | 27,188 | 26,175 | 27,413 | 30,462 | 1,060,266 |
| Payroll Benefits - Insurance | 2,775 | 2,775 | 2,775 | 2,775 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 2,275 | 86,900 |
| Accounting & Bookkeeping | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 27,000 |
| Advertising | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 10,800 |
| Subscriptions | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 7,200 |
| Bank Service Charges | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 25 | 900 |
| Business Licenses and Permits | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 20 | 720 |
| Cleaning/Maintenance | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 1,011 | 36,378 |
| Insurance | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 1,935 | 69,660 |
| Lease: Leaf | - | - | - | - | - | - | - | - | - | - | - | - | 1,466 |
| Magazines & Periodicals | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | 275 | - | 9,625 |
| Merchant Account Fees | 2,252 | 2,289 | 2,092 | 1,934 | 2,423 | 1,923 | 1,916 | 2,119 | 1,849 | 1,811 | 1,894 | 1,946 | 71,825 |
| Rent Expense | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 16,950 | 610,200 |
| Lease Deferrals | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 1,205 | 43,364 |
| Supplies - COGS | 3,754 | 3,816 | 3,487 | 3,224 | 4,039 | 3,204 | 3,193 | 3,531 | 3,081 | 3,019 | 3,156 | 3,244 | 119,709 |
| Supplies - Other Office | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 538 | 19,350 |
| Travel | 50 | 50 | 50 | 14 | 50 | 50 | 50 | 50 | 50 | 50 | 50 | - | 1,722 |
| Telephone Expense | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 450 | 16,200 |
| Trash | 225 | 225 | 225 | 225 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 7,825 |
| Utilities | 1,550 | 1,550 | 1,550 | 1,550 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 55,250 |
| **Total Disbursements - Operating** | 67,506 | 68,160 | 64,673 | 63,399 | 69,950 | 61,104 | 60,979 | 64,570 | 59,800 | 58,688 | 60,145 | 63,010 | 2,256,359 |
| **Cash Flows From Operations** | 7,574 | 8,154 | 5,062 | 1,073 | 10,825 | 2,981 | 2,871 | 6,055 | 1,825 | 1,687 | 2,980 | 1,865 | 137,814 |
| **Restructuring Disbursements** | | | | | | | | | | | | | |
| Professional Fees - Debtor Counsel | - | 2,000 | - | - | 2,000 | - | - | - | - | - | - | - | 20,000 |
| Professional Fees - Financial Advisor | - | 2,000 | - | - | 2,000 | - | - | - | - | - | - | - | 15,000 |
| Sub V Trustee Fees | - | - | - | 2,500 | - | - | - | - | - | - | - | - | 15,000 |
| Lease Cure | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 282 | 25,851 |
| Priority Creditors | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 1,105 | 39,780 |
| Secured Lienholder | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 366 | 13,182 |
| Unsecured Creditors | - | - | - | - | - | 10,000 | - | - | - | - | - | - | 29,000 |
| Other Restructuring Costs | - | - | - | - | - | - | - | - | - | - | - | - | |
| **Total Restructuring Costs** | 1,753 | 5,753 | 1,753 | 1,753 | 8,253 | 11,753 | 1,753 | 1,753 | 1,753 | 1,753 | 1,753 | 11,753 | 157,814 |
| **Total Disbursements** | 69,259 | 73,914 | 66,427 | 65,152 | 78,203 | 72,857 | 62,733 | 66,323 | 61,553 | 60,441 | 61,898 | 74,763 | 2,414,173 |
| **Net Cash Flow (Before Financing)** | 5,821 | 2,401 | 3,309 | (680) | 2,572 | (8,772) | 1,117 | 4,302 | 72 | (66) | 1,227 | (9,888) | (20,000) |
| **Closing Cash Balance** | $ 4,407 | $ 6,807 | $ 10,116 | $ 9,436 | $ 12,008 | $ 3,236 | $ 4,353 | $ 8,655 | $ 8,727 | $ 8,661 | $ 9,888 | $ (0) | $ (0) |